James C. Shah (SBN 260435)
Rose F. Luzon (SBN  221544)
SHEPHERD, FINKELMAN, MILLER &
  SHAH, LLP
401 West A Street, Suite 2550
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com
       rluzon@sfmslaw.com

**Counsel for Plaintiffs and the Proposed Class**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AUDRA HUDSON, PAMELA WILLIAMS and NATOYA JOHNSON On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ONTEL PRODUCTS CORPORATION,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs, Audra Hudson  ("Hudson" or "Plaintiff Hudson"), Pamela Williams ("Williams" or "Plaintiff Williams"), and Natoya Johnson ("Johnson" or "Plaintiff Johnson") (collectively, "Plaintiffs"), allege, upon personal knowledge as to themselves and their own acts, and upon information and belief (based on the investigation of counsel) as to all other matters, as follows:

**NATURE OF ACTION**

1.     Defendant, Ontel Products Corporation ("Ontel" or "Defendant"), manufactures, markets and sells the Wonder Wax Microwaveable Waxing Kit ("Wonder Wax" or the "Product"). Specifically, Ontel markets and advertises Wonder Wax, including the label on all Product packaging, as (1) providing "Quick & Painless Hair Removal!;" (2) a product that "Sticks to hair; not to skin;" (3) "Fast, easy and effective;" (4) a product that produces "Long-lasting results" that is appropriate for "Use from head to toe;" and (5) a product that is

"For all skin types."

2. Through its advertising, Defendant has conveyed a singular message: Wonder Wax is a safe, easy, painless and effective way to remove unwanted hair. Each person who has purchased Wonder Wax has been exposed to the advertising message and, in particular, the misleading labels, and purchased the Product as a direct result of that message.

3. Defendant's claims are deceptive and misleading, and have been designed solely to cause consumers to buy Wonder Wax. Defendant knew, or should have known, at the time it began selling the Product, that the Product is not a safe, easy, painless and effective way to remove unwanted hair.

4. Wonder Wax is a worthless Product, uniformly failing to provide the results promised. In fact, the Product actually is dangerous, causing injuries to numerous consumers. As a result of seeing Defendant's false and misleading representations, Plaintiffs and consumers bought Wonder Wax, and have been damaged and suffered an ascertainable loss as a result of the wrongful conduct.

5. This nationwide class action seeks to provide redress to consumers who have been harmed by Defendant's false and misleading marketing practices. Defendant's conduct has included the systematic and continuous dissemination of false and misleading information from New Jersey and throughout the United States via pervasive multi-media advertising and the product packaging, all of which were and are intended to induce unsuspecting consumers, including Plaintiffs and the members of the class ("Class" or "Classes") (defined below), into purchasing Wonder Wax.

6. Plaintiffs assert claims on behalf of themselves and the classes (defined below) for violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A.§ 56:8-1, *et seq.*, and in the alternative, for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*; the Georgia Deceptive Trade Practices Act ("GDTPA"), Ga. Code Ann. § 10-1-370, *et seq.*; the Georgia Fair Business Practices Act ("GFBPA"), Ga. Code Ann. § 10-1-390 *et seq.*; the California Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et*

*seq*.; the California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq*.; and the California False Advertising Law ("FAL"), California Business and Professions Code, § 17500, *et seq*.

7. Though this action, Plaintiffs seek injunctive relief, actual damages, restitution or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class as a result of Defendant's unlawful conduct.

**PARTIES**

8. Hudson is, and all times relevant to this action has been, a resident and citizen of California.

9. Williams is, and at all times relevant to this action has been, a resident and citizen of Georgia.

10. Johnson is, and all times relevant to this action has been, a resident and citizen of Florida.

11. Ontel is a New Jersey corporation with its principal place of business in Fairfield, New Jersey. Ontel, therefore, is a citizen of New Jersey.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendant is a resident of this judicial district, conducts business throughout this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within and emanated from this judicial district.

**FACTUAL BACKGROUND**

14. This class action is brought against Ontel for the benefit and protection of all purchasers of Wonder Wax.

15. Wonder Wax's labeling and marketing communicates a persistent and material

message and makes a common and pervasive representation that the Product will provide safe, easy, painless and effective hair removal.

16. The core representations alleged to be false and misleading, that the Product offers safe, easy, painless and effective hair removal, are contained on the label itself for every purchaser to read.

17. On the label, prominent lettering proclaims that the Product (1) provides "Quick & Painless Hair Removal!;" (2) a product that "Sticks to hair; not to skin;" (3) "Fast, easy and effective;" (4) a product that produces "Long-lasting results" that is appropriate for "Use from head to toe;" and (5) a product that is "For all skin types."

18. In fact, the Product fails to effectively remove hair, and, in fact, frequently causes consumers great pain, and causes users to suffer injuries, including burns.

19. Ontel was aware of the fact that the Product did not work as advertised before it brought the Product to market. In addition to its pre-sale knowledge, Ontel was further aware that the Product did not work as advertised as it began receiving complaints about the Product from consumers immediately after the Product was brought to market.

20. Had Plaintiffs and other members of the proposed Class been aware of the truth, they would not have purchased or used Wonder Wax.

**Plaintiffs' Experiences**

21. Hudson had, in the past, seen television advertising for the Product. In April, 2015, she saw the Product on the shelf when she was shopping at a Walmart store in Roseville, California, and, based on the advertising she had seen in the past, she reviewed the packaging. The packaging, like the television advertising, touted the Product as providing quick, safe, easy and painless hair removal, and in reliance on the packaging and the advertising, Hudson purchased the Product.

22. Several weeks later, in May, 2015, Hudson opened and used the box of Wonder Wax. She followed the instructions on the box, but the Product did not remove hair easily and painlessly. In fact, removal of the Product was extremely painful, and caused burns and abrasions, requiring Hudson to seek medical attention.

23. Had Hudson known the truth about Wonder Wax, she would not have purchased or used the Product.

24. In February 2015, Johnson saw a television advertisement for Wonder Wax, touting the Product as providing quick, safe, easy and painless hair removal. Several weeks later, when shopping at a Walmart in Bartow, Florida, Johnson saw the Product on the shelf and, in reliance on the advertisement she had seen and the Product label, purchased the Product.

25. Later, at her home in Bartow, Florida, Johnson reviewed the directions printed on the Product packaging. She followed these directions, and applied the Wonder Wax to her leg. After the Wonder Wax hardened, Johnson attempted to remove the Product as provided in the directions, but found that removal was extremely painful.

26. Before going any further, Johnson checked the Product packaging for information on contacting the company to ask for further details on how to remove the Product without pain, but the packaging provided no phone number, website, or even an e-mail address. She conducted online searches, and found numerous reviews from customers who had tried the Product and experienced the same problem, but no solution on how to remove it without pain.

27. Ultimately, Johnson went to her physician, and there a Nurse Practitioner assisted her in ripping the Wonder Wax off her leg, with great pain. That night the area was swollen, and it remained swollen for several days. When icing the area did not help after a few days, Johnson again visited her physician. Johnson's pain lasted for many weeks.

28. Had Johnson known the truth about Wonder Wax, she would not have purchased or used the Product.

29. Williams had in the past seen television advertising for the Product. On February 6, 2015, she saw the Product on the shelf when she was shopping at a Walmart store in Statesboro, Georgia, and, based on the advertising she had seen in the past, she reviewed the packaging. The packaging, like the television advertising, touted the Product as providing quick, safe, easy and painless hair removal, and in reliance on the packaging and the advertising Williams purchased the Product.

30. Several weeks later, on March 23, 2015, Williams opened and used the box of

Wonder Wax. She followed the instructions on the box, but the Product did not melt as indicated on the packaging. Instead, the Product matted up, and did not dry properly, and stuck to everything it touched.

31. Williams was forced to use scissors to cut the Wonder Wax off, which was severely painful. She was forced to cut her hair along with the Wonder Wax, and the process created sores that caused her great pain for several weeks.

32. Had Williams known the truth about Wonder Wax, she would not have purchased or used the Product.

33. Plaintiffs each suffered an ascertainable loss in the amount of the price of the Wonder Wax as a result of the improper actions described herein because the Product did not perform as Defendant claimed.

**Classes Defined**

34. Plaintiffs seeks to represent three Classes (collectively, the "Class" or "Classes"), defined as:

> **California Class:** All persons who purchased the Wonder Wax Product within the State of California, not for resale or assignment.
>
> **Georgia Class:** All persons who purchased the Wonder Wax Product within the State of Georgia, not for resale or assignment.
>
> **Florida Class:** All persons who purchased the Wonder Wax Product within the State of Florida, not for resale or assignment.

35. **Numerosity/Impracticability of Joinder**: The members of the Classes are so numerous that joinder of all members would be impracticable. The proposed Classes include thousands of members. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control or otherwise obtained through reasonable means.

36. **Commonality and Predominance**: There are common questions of law and fact which predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, include, but are not limited to the following:

      a.    whether Defendant engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, promotion or sale of the Wonder Wax Product;

      b.    whether Defendant's acts and omissions violated the CLRA, UCL, and FAL, FDUTPA, the GFBPA, and GFBPA;

      c.    whether Defendant made material misrepresentations of fact or omitted to state material facts to Plaintiffs and the Classes regarding the marketing, promotion, advertising and sale of the Wonder Wax, which material misrepresentations or omissions operated as fraud and deceit upon Plaintiffs and the Classes;

      d.    whether Defendant's false and misleading statements of fact and concealment of material facts regarding the Product were intended to deceive the public;

      e.    whether, as a result of Defendant's misconduct, Plaintiffs and the Classes are entitled to equitable and other relief, and, if so, the nature of such relief; and

      f.    whether the members of the Classes have sustained ascertainable loss and damages as a result of Defendant's acts and omissions, and the proper measure thereof.

37.    **Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Classes they seek to represent. Plaintiffs and all Class members have been injured by the same wrongful practices in which Defendant has engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

38.    **Adequacy**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests which are contrary to or conflicting with the Classes.

39.    **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

1  Individual members of the Classes do not have a significant interest in individually controlling
2  the prosecution of separate actions, and individualized litigation would also present the potential
3  for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to
4  all of the parties and to the court system because of multiple trials of the same factual and legal
5  issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that
6  would preclude its maintenance as a class action.  In addition, Defendant has acted or refused to
7  act on grounds generally applicable to the Classes and, as such, final injunctive relief or
8  corresponding declaratory relief with regard to the members of the Class as a whole is
9  appropriate.

10  40.  Plaintiffs will not have any difficulty in managing this litigation as a class action.

**FIRST COUNT**
**On Behalf Of Plaintiff Hudson And The California Sub-Class Against Ontel**
**(Violations ofthe  CLRA, California Civil Code § 1750, *et seq*.)**

13  41.  Plaintiff Hudson repeats and realleges the allegations of the preceding paragraphs
14  as if fully set forth herein.

15  42.  This cause of action is brought under the CLRA.  Plaintiff Hudson and the Class
16  are consumers as defined by California Civil Code § 1761(d), and Wonder Wax constitutes
17  goods and services within the meaning of the CLRA.

18  43.  Defendant violated and continues to violate the CLRA by engaging in the
19  following deceptive practices proscribed by California Civil Code § 1770(a) in connection with
20  transactions intended to result in, and that did result in, the sale of the Product to Plaintiff
21  Hudson and members of the Class in violation of, *inter alia*, the following provisions:

22  a.  Representing the goods and services have characteristics, uses, or benefits
23  which they do not have (Cal. Civ. Code § 1770(a)(5));

24  b.  Representing the goods and services are of a particular standard, quality,
25  or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

26  c.  Advertising goods and services with the intent not to sell them as
27  advertised (Cal. Civ. Code § 1770(a)(9));

28  d.  Representing a transaction that involves rights, remedies, or obligations

Class Action Complaint                    8

that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

        e.    Representing the goods and services have been supplied in accordance with a previous representation, when they have not (Cal. Civ. Code § 1770(a)(16)).

44.    Plaintiff Hudson and other Class members, in purchasing and using the Product, acted reasonably in response to Defendant's representations, and would have considered the omitted facts material to their purchase decision. Plaintiff Hudson and the Class have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

45.    The representations regarding the Product were material to Plaintiff Hudson and members of the Class. Defendant intended that Plaintiff Hudson and Class members would rely on these representations and they did, in fact, rely on the representations.

46.    Under Civil Code § 1782(a), Plaintiffs provided the required 30-day notice, on March 26, 2015, and again on June 30, 2015, before filing the Complaint pursuant to Civil Code § 1782(d). Following receipt of the notice, Defendant refused to provide the requested remedies to the Class.

47.    Plaintiff Hudson and the members of Class also are entitled to recover actual or statutory compensatory/monetary damages as authorized by Civil Code §§ 1780(a)(1) and 1781(a)(1), restitution as applicable and authorized under Civil Code § 1780(a)(3), and punitive damages as authorized by Civil Code § 1780(a)(4), which are appropriate in this case in light of Defendant's knowing, intentional, malicious, fraudulent, unconscionable conduct, and reckless disregard of its legal obligations to Plaintiff Hudson and the members of the Class, and as otherwise recoverable under Civil Code § 1780(a)(4).

48.    Plaintiff Hudson and the members of Class also are entitled to recover attorneys' fees and costs pursuant to Civil Code §§ 1780 and 1781.

**SECOND COUNT**
**On Behalf Of Plaintiff Hudson And The California Sub-Class Against Ontel**
**(Violations of the FAL, California Business and Professions Code § 17500, *et seq*.)**

49.    Plaintiff Hudson repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

50. Defendant's acts and practices as described herein have deceived and/or are likely to deceive members of the Class and the public. Defendant has advertised and stated on the Product labels that Wonder Wax is a safe, easy, painless and effective way to remove unwanted hair. In reality, the Product is not a safe, easy, painless and effective way to remove unwanted hair, and in no manner is it worth the price paid by Plaintiff Hudson and the Class members.

51. Defendant is disseminating uniform advertising, including Product labeling, concerning its Product and services, which by its nature is unfair, deceptive, untrue, or misleading within the meaning of the FAL. Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

52. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have the likelihood to deceive in that Defendant has failed to disclose the true and actual nature of the Product. Defendant has failed to initiate a public information campaign to alert consumers of the Product's true nature, which continues to create a misleading perception of the Product's characteristics.

53. In making and disseminating the statements alleged herein, Defendant should have known its advertising and Product labels were untrue and misleading, in violation of the FAL. Plaintiff Hudson and the Class members based their decisions to purchase the Product, in substantial part, on Defendant's misrepresentations and omitted material facts regarding the true nature of the Product. The revenues to Defendant attributable to the Product sold using those false and misleading labeling amounts to substantial monies paid for the Product. Plaintiff Hudson and the Class were injured in fact and lost money or property as a result.

54. Defendant intended for consumers to rely on these representations and omissions and Plaintiff Hudson and Class members, in fact, relied on Defendant's misrepresentations and omissions.

55. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising, and therefore, constitute a violation of the FAL.

56. As a result of Defendant's wrongful conduct, Plaintiff Hudson and the Class

members request that this Court enjoin Defendant from continuing to violate the FAL. Such conduct is ongoing and continues to this date. Plaintiff Hudson and the Class are therefore entitled to the relief described below as appropriate for this cause of action.

**THIRD COUNT**
**On Behalf Of Plaintiff Hudson And The California Sub-Class Against Ontel**
**(Violations of the UCL, California Business and Professions Code § 17200, *et seq*.)**

57. Plaintiff Hudson repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

58. The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

59. Defendant violated, and continues to violate, the UCL by misrepresenting Wonder Wax as a safe, easy, painless and effective way to remove unwanted hair.

60. By engaging in the above described acts and practices, Defendant has committed an unfair business practice within the meaning of the UCL. Consumers suffered substantial injury they could not reasonably have avoided other than by not purchasing the Product.

61. Defendant's acts and practices have deceived and are likely to deceive Class members and the public and thus constitute a fraudulent business practice. Defendant uniformly advertised and labeled the Product as a safe, easy, painless and effective way to remove unwanted hair.

62. The acts and practices of Defendant are an unlawful business act or practice because they violate, *inter alia*, California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, California Commercial Code § 2313, and California Business and Professions Code § 17560.

63. As discussed above, Plaintiff and the members of the Class purchased the Product directly from Defendant or its authorized retail agents. Plaintiff Hudson and members of the Class were injured in fact and lost money or property as a result of such acts of unfair competition.

64. The injuries suffered by Plaintiff Hudson and Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Hudson and Class members reasonably should have or could have avoided.

65.     Defendant received the funds paid by Plaintiff Hudson and the members of the Class.  Defendant profited by misrepresenting the properties of Wonder Wax that it otherwise would not have sold.  Defendant's revenues attributable thereto are thus directly traceable to the millions of dollars paid out by Plaintiff Hudson and the Class for the Product.

66.     Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, Plaintiff Hudson and the Class will continue to be injured by Defendant's conduct.

67.     Defendant, through its acts of unfair competition, has acquired money from Class members.  Plaintiff Hudson and the Class request this Court to enjoin Defendant from continuing to violate the UCL.

68.     The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date.  Plaintiff and the Class, therefore, are entitled to relief described below as appropriate for this cause of action.

**FOURTH COUNT**
**On Behalf Of Plaintiff Johnson And The Florida Sub-Class Against Ontel**
**(Violations of FDUTPA, Fla. Stat. § 501.201, *et seq.*)**

69.     Plaintiff Johnson repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

70.     Plaintiff Johnson resides and bought Wonder Wax in Florida.

71.     Plaintiff Johnson and the Class members are consumers within the meaning of FDUTPA.

72.     Defendant, through its conduct described in this Complaint, is engaged in trade or commerce within the meaning of the FDUTPA.

73.     The purchase of Wonder Wax by Plaintiff Johnson and Class members, as described herein, constitutes consumer transactions within the meaning of the FDUTPA.

74.     Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

75. Defendant has engaged in deceptive practices in the sale of Wonder Wax because Defendant knew that it had purposely marketed and sold the Product in a manner that made Plaintiff Johnson and reasonable consumers believe that the Product is a safe, easy, painless and effective way to remove unwanted hair.

76. Defendant has engaged in deceptive practices in the sale of Wonder Wax because Defendant knew the Product is not a safe, easy, painless and effective way to remove unwanted hair.

77. Similarly, Defendant also failed to disclose material facts regarding Wonder Wax to Plaintiff Johnson and members of the Class -- namely, that the Product is not a safe, easy, painless and effective way to remove unwanted hair.

78. By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce, which offends public policies and is immoral, unscrupulous and injurious to consumers.

79. Plaintiff Johnson and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid more, or paid at all, for Wonder Wax, than they would have if they had known about the false statements.

80. The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions. The representations at issue in this litigation were material to Plaintiff Johnson and any reasonable consumer.

81. Had Defendant disclosed all material information regarding Wonder Wax to Plaintiff Johnson and other members of the Class, they would not have purchased the Product, or would have paid substantially less for it.

82. As a direct and proximate result of Defendant's violations of the FDUTPA, Plaintiff Johnson and the Class have suffered injury in fact, actual damages and ascertainable loss by purchasing Wonder Wax. Had Defendant disclosed the true quality and nature of the Product,

Plaintiff Johnson and the Class would not have purchased it, or would have paid substantially less for it.

**FIFTH COUNT**
**On Behalf Of Plaintiff Williams And The Georgia Sub-Class Against Ontel**
**(Violations of GDTPA, Ga. Code. § 10-1-370, *et seq.*)**

83. Plaintiff Williams repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

84. Plaintiff Williams resides and bought Wonder Wax in Georgia.

85. Defendant, through its conduct described in this Complaint, is engaged in trade or commerce within the meaning of the GDTPA.

86. Ontel's actions affect the public interest because Plaintiff Williams and the Class members were injured in the same way as thousands of others who purchased Wonder Wax, as a result of Ontel's generalized course of deception described above.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ontel's business.

87. Defendant has engaged in deceptive practices in the sale of Wonder Wax because Defendant knew that it had purposely marketed and sold the Product in a manner that made Plaintiff Williams and reasonable consumers believe that the Product is a safe, easy, painless and effective way to remove unwanted hair.

88. Defendant has engaged in deceptive practices in the sale of Wonder Wax because Defendant knew the Product is not a safe, easy, painless and effective way to remove unwanted hair.

89. Similarly, Defendant also failed to disclose material facts Wonder Wax to Plaintiff Williams and members of the Class -- namely, that the Product is not a safe, easy, painless and effective way to remove unwanted hair.

90. By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce, which offends public policies and is immoral, unscrupulous and injurious to consumers.

91. Plaintiff Williams and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid more, or paid at all, for Wonder Wax, than they would have if they had known about the false statements.

92. The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions. The representations at issue in this litigation were material to Plaintiff Williams and any reasonable consumer.

93. Had Defendant disclosed all material information regarding Wonder Wax to Plaintiff Williams and other members of the Class, they would not have purchased the Product, or would have paid substantially less for it.

94. As a direct and proximate result of Defendant's violations of the GDTPA, Plaintiff Williams and the Class have suffered injury in fact, actual damage and ascertainable loss by purchasing Wonder Wax. Had Defendant disclosed the true quality and nature of the Product, Plaintiff Williams and the Class would not have purchased it, or would have paid substantially less for it.

**SIXTH COUNT**
**On Behalf Of Plaintiff Williams And The Georgia Sub-Class Against Ontel**
**(Violations of the GFBPA, Ga. Code. § 10-1-390, *et seq*.)**

95. Plaintiff Williams repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

96. Plaintiff Williams resides and bought Wonder Wax in Georgia.

97. Defendant's conduct, as described in this Complaint, occurred in the conduct of a trade or business, and in the context of the consumer marketplace.

98. Ontel's actions affect the public interest because Plaintiff Williams and the Class members were injured in the same way as thousands of others who purchased Wonder Wax, as a result of Ontel's generalized course of deception described above. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ontel's business.

99. Defendant has engaged in deceptive practices in the sale of Wonder Wax because Defendant knew that it had purposely marketed and sold the Product in a manner that made

Plaintiff Williams and reasonable consumers believe that the Product is a safe, easy, painless and effective way to remove unwanted hair.

100. Defendant has engaged in deceptive practices in the sale of Wonder Wax because Defendant knew the Product is not a safe, easy, painless and effective way to remove unwanted hair.

101. Similarly, Defendant also failed to disclose material facts regarding Wonder Wax to Plaintiff Williams and members of the Class -- namely, that the Product is not a safe, easy, painless and effective way to remove unwanted hair.

102. By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce, which offends public policies and is immoral, unscrupulous and injurious to consumers.

103. Plaintiff Williams and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid more, or paid at all, for Wonder Wax than they would have if they had known about the false statements.

104. The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions. The representations at issue in this litigation were material to Plaintiff Williams and any reasonable consumer.

105. Had Defendant disclosed all material information regarding Wonder Wax to Plaintiff Williams and other members of the Class, they would not have purchased the Product, or would have paid substantially less for it.

106. As a direct and proximate result of Defendant's violations of the GFBPA, Plaintiff Williams and the Class have suffered injury in fact, actual damage and ascertainable loss by purchasing Wonder Wax. Had Defendant disclosed the true quality and nature of the Product, Plaintiff Williams and the Class would not have purchased it, or would have paid substantially less for it.

107. As required by Ga. Code Ann. § 10-1-390, Plaintiff Williams will serve the Georgia Attorney General with a copy of this Complaint, as she also seeks injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, pray for judgment against Defendant granting the following relief:

A. An Order certifying this case as a class action and appointing Plaintiffs as Class representatives and Plaintiffs' counsel to represent the Classes;

B. Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

C. All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

D. Actual and statutory damages for injuries suffered by Plaintiffs and the Classes and in the maximum amount permitted by applicable law;

E. An Order (1) requiring Defendant to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering Defendant to engage in a corrective notice campaign; and (4) requiring Defendant to pay to Plaintiffs and all members of the Classes the amounts paid for the Wonder Wax;

F. Statutory pre-judgment and post-judgment interest on any amounts;

G. Payment of reasonable attorneys' fees and costs; and

H. Such other relief as the Court may deem just and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: November 2, 2015

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP

 s/James C. Shah
James C. Shah (SBN 260435)
Rose F. Luzon (SBN 221544)
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
401 West A Street, Suite 2550
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com
       rluzon@sfmslaw.com

Kolin Tang (SBN 279834)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com

Marc A. Wites
WITES & KAPETAN, P.A.
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 570-8989
Facsimile: (954) 354-0205
Email: mwites@wklawyers.com

**Attorneys for Plaintiffs and the Proposed Class**